UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: _____

|  |  |
|---|---|
| MICHAEL RAE <br> Plaintiff <br><br> v. <br><br> COMMONWEALTH OF <br> MASSACHUSETTS, MASSACHUSETTS <br> BAY TRANSPORTATION AUTHORITY <br> AND <br> KENNETH GREEN <br> AND <br> RICHARD SULLIVAN <br> Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. INTRODUCTION

1.      This is an action under M.G.L. c.151B, 42 USC §1983, 42 USC §1981, M.G.L. c.12 §11, M.G.L. c. 149 section 148, and 38 U.S. Code section 4301 et seq., for unlawful discrimination based upon race and veteran status, retaliation for complaining of discrimination, interference with contractual relationships, interference with protected rights of association and interference with statutory and constitutional rights, and failure to pay wages owed. The action is brought by Michael Rae, a White male who worked for the Massachusetts Bay Transportation Authority ("MBTA") as a Lieutenant in the MBTA Police Department until March 28, 2017. Kenneth Green, at all times relevant to this Complaint, has been the Chief of the MBTA Police Department. Richard Sullivan, at all times relevant to this Complaint, has been the Superintendent of the MBTA Police Department, the "second in command" to Chief Green. Chief Green and Superintendent Sullivan, and other MBTA managers and supervisors engaged in the illegal practices alleged in this Complaint.

### JURISDICTION AND VENUE

2.      Jurisdiction over this matter lies in this Court pursuant to 28 USC §1343, and 28 USC §1367 (Supplemental Jurisdiction).

3.     Venue in Suffolk County is proper because the illegal employment practices complained of herein occurred in Boston, Suffolk County, Massachusetts. Upon information and belief, the employment records related to Plaintiff's employment with Defendant MBTA are also located within Boston, Suffolk County, Massachusetts.

4.     On 2/8/17, Mr. Rae filed a timely Charge of Discrimination on the basis of race and veteran status with the Massachusetts Commission Against Discrimination and the U.S. Equal Employment Opportunity Commission.

5.     Mr. Rae has requested that his Charges of Discrimination pending at the Massachusetts Commission Against Discrimination and U.S. Equal Employment Opportunity Commission be withdrawn to allow him to file suit in Court. Those requests have been granted.

**THE PARTIES**

6.     Michael Rae is a resident of Mansfield, Bristol County, Massachusetts. He is a citizen of the United States.      His race is White/Caucasian. He is a disabled Veteran of the U.S. Coast Guard.

7.     Defendant Commonwealth of Massachusetts, Massachusetts Bay Transportation Authority ("MBTA") is an agency of the government of the Commonwealth of Massachusetts, a political subdivision of the Commonwealth of Massachusetts pursuant to M.G.L. c.161A §2, with a principal place of business in Boston, Suffolk County, Massachusetts. The MBTA was Plaintiff's employer. It is also responsible for the illegal actions of any and all of Plaintiff's managers and supervisors in relation to this action. At all times relevant to this Complaint, Defendant Commonwealth of Massachusetts, MBTA was an "employer" within the meaning of MGL Chapter 151B section 5, and was a "person" within the meaning of MGL Chapter 151B section 4, and in all other respects met all of the requirements for coverage under MGL Chapter 151B.

8.     Defendant Kenneth Green is an individual residing in Massachusetts.   At all times relevant to this Complaint, he was Chief of the MBTA Police Department, was one of the

2

supervisors and managers of the MBTA Police Department, and engaged in all of the illegal and retaliatory actions alleged in this Complaint. Chief Green is sued in his individual capacity.

9.     Defendant Richard Sullivan is an individual residing in Massachusetts. At all times relevant to this Complaint, he was the Superintendent of the MBTA Police Department, and engaged in the illegal and discriminatory actions alleged in this Complaint. Mr. Sullivan is sued in his individual capacity.

10.    At all times relevant to this Complaint, Plaintiff performed his job in a satisfactory manner.

## FACTUAL BACKGROUND

11. Lieutenant Michael Rae started his employment with the MBTA Police Department in August 2002. Due to his excellent work, Michael Rae was promoted to Lieutenant in 2013. As of the date of his suspension from duty, 11/10/16, his position was Night Shift Lieutenant. Lieutenant Rae's employment was terminated by the MBTA on March 28, 2017.

12. From March 2015 until the termination of his employment, Lieutenant Rae served as President of the MBTA Police Superior Officers Association, a labor union. In that position, Lieutenant Rae was a vocal and outspoken advocate for his union members, both in terms of negotiations regarding terms and conditions of employment, opposing unjust discipline, and attempting to correct unfair or improper policies and practices. In this position, prior to September 2016, Lieutenant Rae had filed complaints and grievances regarding the MBTA Police Department Command Staff, including Chief Green and Superintendent Sullivan.

13. After approximately early 2016, Chief Green and Superintendent Sullivan viewed the normal "give and take" of the management/union relationship with Lieutenant Rae, as a personal matter, rather than business, and took improper and retaliatory actions against Lieutenant Rae due to his labor union activities and his speech on various matters.

14. On or about the second week of April 2016, Chief Green was interviewed on the radio by

3

radio station 101.3 ( a "pirate" radio station also known as BigCityFM) for over an hour, in a broadcast to the public. The interview was also recorded on video, and for some time was available to the public on You-Tube. During the interview, Chief Green was speaking as the Chief of the MBTA Police Department, and indeed, was in uniform. In the course of the interview, Chief Green made a number of statements which clearly indicated his bias, prejudice and discriminatory intent toward MBTA Police Department employees and potential employees who were White, who were Veterans, and who were disabled Veterans.

15. During the interview, Chief Green either stated directly, or implied, that there were too many White Police Officers in the MBTA Police Department, that there were too many White Superior Officers in the MBTA Police Department (in other words, Sergeants and Lieutenants), that there were not enough Black Police Officers in the MBTA Police Department, that there were not enough Black Superior Officers in the MBTA Police Department (in other words, Sergeants and Lieutenants), that there were too many Veterans and disabled Veterans in the MBTA Police Department, that Veterans and Disabled Veterans had been unfairly advanced in the MBTA Police Department, that his Command Staff also wanted to change the demographics of the MBTA Police Department, and that White people did not want things to change in the MBTA Police Department.

16. Chief Green stated explicitly and specifically in his radio interview, that he personally intended to "Darken" the MBTA Police Department.

17. In June 2016, a photograph of Superintendent Sullivan allegedly asleep while on duty was forwarded throughout the MBTA Operations Center. Although Lieutenant Rae was not involved in forwarding this photograph, Superintendent Sullivan apparently developed bad will against Lieutenant Rae based upon this incident, as he held the Superior Officers Association (and therefore Superior Officers Association President Michael Rae) responsible for embarrassing him in this matter.

4

18. Superintendent Sullivan stated during the summer of 2016 that he was going to "crush" the officers of the Superior Officers Association, and that he would "go after" all of the officers of the Superior Officers Association.

19. On September 27, 2016, Lieutenant Rae filed a complaint with the MBTA's Office of Diversity and Civil Rights ("ODCR"), complaining that two other officers had threatened him with severe physical harm. On information and belief, Sergeant Flanagan is often favored by the Command Staff, including by Superintendent Sullivan. This serious threat of assault and battery has never been adequately investigated by either ODCR, the MBTA Police Department's Professional Standards Unit, or any other official organ of the MBTA. There is no valid explanation, and no excuse, for this intentional oversight. The failure to adequately investigate is due to animus against Lieutenant Rae by the MBTA Command Staff, including Chief Green and Superintendent Sullivan.

20. On October 6, 2016, one week after the complaint referred to in paragraph 19 above was filed, there was a significant protest at the MBTA Money Room, regarding the hiring of a private firm to replace MBTA employees in certain Money Room functions. In the course of the protest, seven union officials were arrested. Lieutenant Rae was present in his official law enforcement capacity, on duty. During the course of this incident, Superintendent Sullivan arrived at the protest. Superintendent Sullivan confronted Lieutenant Rae almost immediately, asking him rude and inappropriate questions, being disrespectful, and trying to instigate an argument with Lieutenant Rae.

21. The October 6, 2016 discussion between Lieutenant Rae and Superintendent Sullivan became more heated. Eventually, Superintendent Sullivan accused Lieutenant Rae of having sent an anonymous email to the MBTA General Manager complaining about MBTA practices. By this comment, Superintendent Sullivan was accusing Lieutenant Rae of having engaged in whistleblowing.

5

22. Superintendent Sullivan perceived Lieutenant Rae as a whistleblower. Superintendent
Sullivan believed that Lieutenant Rae was a whistleblower as that term is defined in MGL
Chapter 149 section 185. On information and belief, Superintendent Sullivan shared with Chief
Green his belief that Lieutenant Rae was a whistleblower. Chief Green as well as
Superintendent Sullivan perceived Lieutenant Rae as a whistleblower, and Chief Green as well
as Superintendent Sullivan believed that Lieutenant Rae was a whistleblower as that term is
defined in MGL Chapter 149 section 185.

23. Only two weeks after the confrontation referred to in paragraphs 20 and 21 above,
Lieutenant Rae's Department-issued computer was seized by MBTA Police Department
management. No reason was given for the seizure of the computer. In addition to this seizure
constituting a violation of reasonable privacy rights pursuant to MGL Chapter 214 section 1B,
the seizure seriously interfered with Lieutenant Rae continuing to fulfill his duties as Union
President in a pending interest arbitration, the very interest arbitration at which the "offending"
photograph of Superintendent Sullivan had been taken. Lieutenant Rae was also locked out of
his assigned office for several days. Other acts of intimidation and harassment were engaged in
by MBTA Police Department management against Lieutenant Rae, prior to November 10, 2016.

24. On November 10, 2016, Lieutenant Rae filed a second complaint with ODCR, this time
against Chief Green and the Command Staff. Among other things, the complaint alleged the
following:

> "Chief Green conducted an hour long radio interview...During this interview, Chief
> Green made several disparaging and discriminatory remarks...Kenneth Green remarked
> that having Caucasians on the Police Department was "way out of line," "ridiculous" and
> "sad." He commented that he intended to reverse the number of Caucasians and to
> "darken" the department. Chief Green also made the disparaging remarks that the
> department was "too light" and that "whites don't want things to change."
> ...
> Since the airing of this interview, I have been subjected to a hostile work environment by
> the Chief and his Command Staff...I have also been threatened by Richard Sullivan
> indirectly. Richard Sullivan informed a coworker that he was going to spend thousands
> of dollars to destroy me and that he didn't care if he won or lost.
> ...

6

> Recently, I have been the subject of several investigations of "Failing to Supervise" which have all resulted with no cause to discipline.
>
> ...
>
> The department then assigned me to an office space that was accessible to the entire police department and that could not be secured and that was full of debris from previous construction work. Presently my office is the only office in the building that cannot be secured by a locked door. After requesting to be treated the same as all others, I was denied. The department also failed to provide office equipment in the form of a phone, computer, printer and chair.
>
> Under the supervision of Chief Green, he and his staff have been undermining my position with my subordinates by intentionally going around me, circumventing the chain of command and intentionally withholding information from me that is pertinent to my job..."

25. As was the case with Lieutenant Rae's previous complaint to ODCR, this serious complaint has never been adequately investigated by either ODCR, the MBTA Police Department's Professional Standards Unit, or any other official organ of the MBTA. Once again, there is no valid explanation, and no excuse, for this intentional oversight. The failure to adequately investigate is due to animus against Lieutenant Rae by the MBTA Command Staff, including Chief Green and Superintendent Sullivan.

26. Also on November 10, 2016, Lieutenant Rae was placed on indefinite paid administrative leave, and required to hand in his firearm, badge and other equipment. No explanation of what was "under investigation" was provided.

27. On November 30, 2016, Superintendent Sullivan informed Lieutenant Rae by letter, that Lieutenant Rae was the subject of an internal administrative investigation regarding his performance of his assigned duties, in relation to a series of vague and unspecified violations.

28. On February 8, 2017, Lieutenant Rae filed a charge of discrimination with the Massachusetts Commission Against Discrimination and the U.S. Equal Employment Opportunity Commission regarding these matters. The issue of his termination was raised with the Massachusetts Commission Against Discrimination during proceedings before the Commission.

29. The MBTA terminated Lieutenant Rae's employment on March 28, 2017. In October 2017, an Arbitration Hearing regarding the termination of employment was conducted over several days. In February 2018, the Arbitrator issued a decision upholding the termination of employment.

30. MBTA Police Officers who have allegedly engaged in conduct more severe than that in which Lieutenant Rae was alleged to have engaged, have not been subjected to being placed on administrative leave while the allegations against them were being investigated, and were not terminated for those alleged infractions.

31. The actions taken against Lieutenant Rae as set forth above, were not based upon any legitimate performance issues or legitimate management concerns, and in the very least, constituted excessive discipline. They were based solely upon the animus of Chief Green and Superintendent Sullivan against Lieutenant Rae. This animus was grounded in resentment against Lieutenant Rae for his effective and zealous advocacy on behalf of his union members, the desire to retaliate against Lieutenant Rae for both his advocacy on behalf of union members and his speaking out about what he believed were unfair and improper terms and condtions of employment and MBTA Police Department management actions, the desire to retaliate against Lieutenant Rae for real and perceived whistleblowing, discrimination against Lieutenant Rae due to his race and his disabled Veteran status, and retaliation against Lieuitenant Rae for having complained about discrimination.

32. The harassment, suspension and termination of Lieutenant Rae amounts to violation of his federal First Amendment and Massachusetts Declaration of Rights, rights to freedom of speech and association, violation of MGL Chapter 12 section 11 (interference with protected rights by coercion, threats or intimidation), intentional interference with contractual and advantageous relationships, discrimination due to race and disabled Veteran status, and retaliation for complaining of discrimination and discriminatory practices.

33.    The MBTA is fully responsible for the actions of Chief Green, Superintendent Sullivan and any of the other supervisors and managers who engaged in improper actions against Lt. Rae as alleged in this Complaint.

34.    By the actions set forth above, the MBTA has engaged in illegal retaliation against Lt. Rae and denial of his civil rights. The MBTA has also failed to adequately investigate or stop the illegal actions against Lt. Rae, as it is obligated to do under relevant practices, rules, regulations and statutes. The retaliation and illegal treatment of which Lt. Rae complains, was sanctioned and directed by individuals on the MBTA Police Department Command Staff. All of this has been done in order to retaliate against and illegally punish Lt. Rae, and to drive him out of the MBTA Police Department. All of these actions as well as the actions of retaliation set forth above were part of an illegal campaign of retaliation and illegal treatment against Lt. Rae.

35.    The actions of the MBTA, Chief Green and Superintendent Sullivan set forth above were willful, intentional and knowing.

36.    The MBTA failed to effectively and adequately remedy the retaliation and illegal treatment suffered by Lt. Rae. The MBTA failed to adequately investigate or stop the retaliation and illegal treatment being suffered by Lt. Rae.

37.    As a direct and proximate result of the illegal and retaliatory actions of the MBTA, Chief Green and Superintendent Sullivan towards him as alleged in this Complaint, Lt. Rae has suffered and will continue to suffer severe emotional and financial harm.

38.  Plaintiff has requested that his complaints of discrimination filed with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission be withdrawn to allow him to file suit, and those requests have been granted. Plaintiff has therefore exhausted his administrative remedies.

39.  After the termination of his employment, Plaintiff made demand upon the MBTA for 249.25 hours of pay owed to him as of the date of the termination of his employment, under various MBTA Police Department policies and practices, with a value of approximately $15,241.63. The MBTA has refused to pay these monies to Plaintiff. Accordingly, Plaintiff filed a Wage Complaint with the Massachusetts Attorney General's Office in early 2019. Plaintiff requested that the Attorney General's Office grant Plaintiff the right to pursue this cause of action for the wages owed in a private suit, and such private right of action was granted on February 12, 2019.

## COUNT I
## AGAINST DEFENDANTS MBTA AND GREEN FOR DISCRIMINATION ON THE BASIS OF RACE, IN VIOLATION OF M.G.L. C.151B

40.     Plaintiff restates and incorporates by reference as if fully set forth herein paragraphs 1-39

above.

41.     By their actions set forth above, and by the actions of the supervisors and managers for

which they are responsible, Defendants MBTA and Green have engaged in discrimination

against Michael Rae on the basis of race, in violation of M.G.L. c.151B.


WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against
Defendants MBTA and Green, jointly and severally, in an amount to be determined by this
Court, including monies to compensate him for lost pay, lost benefits, punitive damages,
emotional pain and suffering, damage to his career, interest, costs, attorney's fees, and such other
and further relief that this Court deems just and proper.

## COUNT II
## AGAINST DEFENDANTS MBTA AND GREEN FOR DISCRIMINATION ON THE BASIS OF VETERAN STATUS, IN VIOLATION OF M.G.L. C.151B

42.     Plaintiff restates and incorporates by reference as if fully set forth herein paragraphs 1-41

above.

43.     By their actions set forth above, and by the actions of the supervisors and managers for

which they are responsible, Defendants MBTA and Green have engaged in discrimination

against Michael Rae on the basis of his Veteran status, in violation of M.G.L. c.151B.


WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against
Defendants MBTA and Green, jointly and severally, in an amount to be determined by this
Court, including monies to compensate him for lost pay, lost benefits, punitive damages,
emotional pain and suffering, damage to his career, interest, costs, attorney's fees, and such other
and further relief that this Court deems just and proper.

## COUNT III
## AGAINST DEFENDANTS MBTA AND GREEN FOR RETALIATION, IN VIOLATION OF M.G.L. C.151B

44.     Plaintiff restates and incorporates by reference as if fully set forth herein paragraphs 1-43
above.

45.     By their actions set forth above, and by the actions of the supervisors and managers for
which they are responsible, Defendants MBTA and Green have engaged in retaliation against
Michael Rae for having complained of discrimination and for having opposed discriminatory
practices, in violation of M.G.L. c.151B.


WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against
Defendants MBTA and Green, jointly and severally, in an amount to be determined by this
Court, including monies to compensate him for lost pay, lost benefits, punitive damages,
emotional pain and suffering, damage to his career, interest, costs, attorney's fees, and such other
and further relief that this Court deems just and proper.

## COUNT IV
## AGAINST DEFENDANTS GREEN AND SULLIVAN FOR INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS AND/OR CONTRACTUAL RELATIONSHIPS

46.     Plaintiff restates and incorporates by reference as if fully set forth herein paragraphs 1-45
above.

47. In relation to his employment with the MBTA, Plaintiff was employed pursuant to a
contract, and had a reasonable expectation of continued employment, which expectation amounts
to an advantageous relationship. By their actions set forth above, Defendants Green and Sullivan
knowingly interfered with that contract and those advantageous relationships. The actions of
Defendants Green and Sullivan in interfering with the contractual and advantageous relationships
of Plaintiff with the MBTA were intentional, and were engaged in by improper motive or means,
as set forth above. Plaintiff suffered harm by these actions interfering with his contractual and
advantageous relationships, including financial harm and emotional pain and suffering. The
actions of Defendants Green and Sullivan in interfering with Plaintiff's contractual and
advantageous relationships were engaged in due to their actual malice toward Plaintiff.

**WHEREFORE,** Plaintiff demands that this Court enter Judgment in his favor and against Defendants Green and Sullivan, jointly and severally, in an amount to be determined by this Court, including monies to compensate him for emotional pain and suffering, lost income, interest, costs, and such other and further relief that this Court deems just and proper.

## COUNT V

### AGAINST DEFENDANTS GREEN AND SULLIVAN FOR VIOLATION OF FIRST AMENDMENT RIGHTS (FREEDOM OF ASSOCIATION) PURSUANT TO 42 U.S. CODE SECTION 1983.

48.     Plaintiff restates and incorporates by reference as if fully set forth herein in paragraphs 1-47 above.

49.     By their actions set forth above, Kenneth Green and Richard Sullivan have acted under color of state law to wrongfully deprive Mr. Rae of his constitutional right to Freedom of Association, by retaliating against him for exercising his rights to join with, participate and engage in and lead labor union activities at the MBTA Police Department.

50.  As a direct and proximate result of Defendant's wrongful actions, Mr. Rae has suffered emotional distress and financial damages.

WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against Defendants Kenneth Green and Richard Sullivan, jointly and severally, in an amount to be determined by this Court, including monies to compensate him for lost pay, lost benefits, punitive damages, emotional pain and suffering, interest, costs, attorney's fees, reinstatement to his former position, and such other and further relief that this Court deems just and proper.

## COUNT VI

### AGAINST DEFENDANT SULLIVAN FOR INTERFERENCE WITH PROTECTED RIGHTS IN VIOLATION OF MGL CHAPTER 12 SECTION 11 THROUGH THREATS, INTIMIDATION AND COERCION.

51. Plaintiff restates and incorporates by reference as if fully set forth herein in paragraphs 1-50 above.

52.     By his actions set forth above, Richard Sullivan has interfered with Mr. Rae's protected rights (the Right to Freedom of Association) through threats, intimidation and coercion.

53. As a direct and proximate result of Defendant's wrongful actions, Mr. Rae has

suffered emotional distress and financial damages.

WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against Defendant, Richard Sullivan, in an amount to be determined by this Court, including monies to compensate him for lost pay, lost benefits, punitive damages, emotional pain and suffering, interest, costs, attorney's fees, reinstatement to his former position, and such other and further relief that this Court deems just and proper.

## COUNT VII

### AGAINST MBTA FOR VIOLATION OF MGL CHAPTER 149 SECTION 148 (FAILURE TO PAY WAGES DUE)

54. Plaintiff restates and incorporates by reference as if fully set forth herein paragraphs 1-53

above.

55. As of the date of the termination of his employment, Mr. Rae was owed 27 days of "Days

Owed" time, and 33.25 hours of "Comp Time," for a total of 249.25 hours of pay he is owed

pursuant to MBTA Police policies, procedures and practices. The "days owed" are either days

that Mr. Rae worked but was not paid due to his schedule, or "days owed" because Mr. Rae

received less than 121 and 1/3 regular days off per year (per the relevant collective bargaining

agreement). The total of hours owed is 249.25. When the number of hours is multiplied by the

hourly rate for a Lieutenant with a Master's Degree ($61.15 per hour), a total amount owed of

$15,241.63 results.

WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against Defendant Commonwealth of Massachusetts, Massachusetts Bay Transportation Auhority, in an amount to be determined by this Court, including monies to compensate him for interest, costs, lost wages, treble damages, attorneys fees, and such other and further relief that this Court deems just and proper.

## JURY TRIAL DEMAND
## PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES AND COUNTS SO TRIABLE

Respectfully submitted,
MICHAEL RAE
By his Attorney,

/s/ Mitchell J. Notis

_____

Mitchell J. Notis, BBO 374360
LAW OFFICE OF MITCHELL J. NOTIS
32 KENT STREET
Brookline, MA 02445
Tel.: 617-566-2700